

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| WATER DYNAMICS, LTD., ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:11-CV-614-A |
| | § | |
| HSBC BANK USA National | § | |
| Association, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Now pending in the above-captioned action is the motion of

defendant, HSBC Bank USA National Association[1] ("HSBC"), to

dismiss the complaint of plaintiffs, Water Dynamics, Ltd. ("Water

Dynamics"), A.C.A.R. Industries, LLC ("ACAR"), Ralph Torrez, Jr.

("Ralph Torrez") and Anita T. Torrez ("the Torrezes"), and Leona

Esquibel Grijalva ("Grijalva") (collectively, "plaintiffs"), for

failure to state a claim. After having considered such motion,

the parties' filings, and applicable legal authorities, the court

has concluded that defendant's motion to dismiss should be

granted.

---

[1]The full name of defendant is "HSBC Bank USA, National Association, As Successor Trustee to Bank of America, N.A., Successor by Merger to Lasalle Bank National Association, as the Same May be Amended from Time to Time, for the Benefit of the SBA and the Holders of the Business Loan Express SBA Loan-Backed Notes, Series 2005-1, as their Interest May Appear Subject to the Multi-Party Agreement dated February 1, 2005."

I.

## Background

Plaintiffs instituted this action against defendant by a pleading filed on August 30, 2011.[2]  Plaintiffs filed an amended complaint ("Complaint") on September 21, 2011.  In the Complaint, plaintiffs alleged claims against defendant for breach of contract and anticipatory breach of contract, unreasonable collection, wrongful foreclosure, violation of the Texas Finance Code, negligent misrepresentation, and gross negligence. Plaintiffs sought an accounting, declaratory relief, and a judgment for actual, statutory, and exemplary damages, and attorney's fees and costs.  Compl. at 14, 16-17.

In summary, plaintiffs made the following allegations in the Complaint:

On December 30, 2004, Water Dynamics executed a note payable to Business Loans Entity, LLC, for a loan in the principal amount of $385,000, which was secured by a deed of trust covering property located at 721 SW Green Oaks Boulevard, Arlington, Texas

---

[2] The court has subject matter jurisdiction over plaintiffs' claims against defendant by reason of 28 U.S.C. §§ 1332(a) and 1441(a).  The parties are completely diverse, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  See Compl. at 2-3.  ACAR, a Texas limited liability company, is a citizen of Texas by virtue of its members, the Torrezes, who are Texas citizens; Water Dynamics, a Texas limited partnership, is a citizen of Texas, by virtue of its partners, the Torrezes and ACAR, which are Texas citizens; Grijalva is a citizen of New Mexico; and defendant is a citizen of Virginia.

("the Water Dynamics Property").  <u>Id.</u> at 3-4.  The Water Dynamics

Property served as the site of a car wash.[3]  <u>Id.</u> at 6.

Under the terms of a collateral agreement, Grijalva allowed

Water Dynamics to place her property ("Grijalva Property"),

located at 449 Hampton Canyon Road, in Aztec, New Mexico, as

collateral for the loan.  <u>Id.</u> at 4; <u>id.</u>, Ex. B.  Prior to the

collateral agreement, "[d]efendant's predecessor made several

representations to Plaintiffs that the Grijalva Property was to

be listed as collateral for the first two years of the loan only

and for the appraised value of the property only."  Compl. at 4.

However, in a letter signed by Grijalva and dated June 24, 2004,

attached as an exhibit to the Complaint, Grijalva stated that she

was aware that the Grijalva Property could be listed as

collateral beyond the initial two years, depending on the

circumstances:

> Please accept this letter as collateral from
> Ultimate Care Car Wash. . . . I understand that I will
> be released from this obligation after two to four
> years (per the loan application) provided that the loan
> is paid down by the amount deemed necessary and/or
> Ultimate Care is in good financial standing with the
> loan through prompt and proper payment.

Compl., Ex. B.

---

[3] On April 25, 2011, both Water Dynamics and ACAR were voluntarily dissolved by the
Torrezes, "who then set about winding up the affairs of the businesses."  Compl. at 2.

Ciena Capital, LCC ("Ciena") then became the servicer of the loan.  Compl. at 4.  In 2008, Water Dynamics "began to fall behind on its loan payments" and "contacted Ciena to inquire about a loan modification."  Id. at 5.  "According to Ciena, the loan modification was approved," and Ciena informed Water Dynamics that its new monthly payment was $1,400."  Id.  Although Water Dynamics "never received a loan modification to sign," it "began making the new monthly payment."  Id.  Water Dynamics "made numerous requests to obtain a copy of the agreement, but Ciena failed to provide one."  Id.  "Shortly after entering into this agreement, Ciena filed for bankruptcy relief," and Water Dynamics stopped receiving monthly statements.  Id.

In summer 2010, Water Dynamics "received a notice that it had defaulted on the loan."  Id.  "At the time that Plaintiff's Note was assigned to Defendant, it was allegedly in default."[4] Id. at 8.  Water Dynamics discovered that despite Ciena's earlier representations that the loan modification was permanent, "Ciena was now contending that the modification was temporary and that as of April 2010, Plaintiff was required to make its original payments of $2,745."  Id. at 5.  "Defendant then began to assess [Water Dynamics'] account with late fees and penalties," claiming

---

[4]It is unclear whether plaintiffs are referring to the default of 2008 or the default of 2010.

4

that Water Dynamics' "reduced payment amount was deficient." Id. at 7-8. "Ciena contended that Plaintiffs were in default and began foreclosure proceedings on the Property." Id. at 5.

"Shortly afterward, Grijalva received a notice of default stating that Water Dynamics had defaulted on the loan and that the loan was secured by the Grijalva Property, which could be subject to foreclosure if the loan default was not cured."[5] Id. Plaintiffs then discovered that, also contrary to earlier representations, "the Grijalva property was listed as collateral for the full term and full amount of the loan." Id. at 5. Plaintiffs further learned that "the loan was personally guaranteed" by ACAR and the Torrezes, who "had no knowledge of the guarantee." Id. at 5-6. Plaintiffs contacted Ciena "to discuss these matters," and Water Dynamics "sought third-party assistance in order to avoid a foreclosure," id. at 6, and to "refinance the loan," id. at 8.

On November 2, 2010, defendant foreclosed on the Water Dynamics Property and "struck off the property to itself" for $169,736, "an amount which was extremely below the market value of the Property," $325,000. Id. at 6, 12, Ex. C, Tarrant County Appraisal District Statement. Ralph Torrez, along with an

---

[5]Despite alleging that notice of default was received, plaintiffs later allege that defendant "mailed Plaintiff's notice of default to the wrong address." Compl. at 8.

unnamed "potential purchaser," attended the trustee's sale to bid on the Water Dynamics Property, but "[a]t no time did the substitute trustee announce the Property for auctioning." Compl. at 6. "Had the sale been announced, the prospective purchaser could have purchased the property for an amount sufficient to discharge the debt." Id. Plaintiffs later alleged however, that defendant "rejected the purchaser's offer" and "then foreclosed for a lesser amount than the purchaser's offer." Id. at 8.

After the foreclosure sale, defendant informed Water Dynamics that if Water Dynamics "voluntar[ily] turned over possession of the [Water Dynamics] Property, that it, along with the other Plaintiffs, would no longer be responsible for the car wash or the loan," Id. On November 4, 2010, plaintiffs "surrendered possession of the [Water Dynamics] Property to Defendant." Id. However, on June 30, 2011, defendant "filed suit in the state of New Mexico for the foreclosure of the Grijalva Property." Id.

On September 13, 2011, Grijalva filed an emergency motion with the court to stay foreclosure proceedings in New Mexico on the Grijalva Property. The court denied the motion to stay proceedings in the New Mexico action.

On October 21, 2011, defendant filed a motion to dismiss the Complaint for failure to state a claim upon which relief may be

granted.  Plaintiffs filed a response, defendant filed a reply,
and plaintiffs filed a sur-reply.

The court now turns to the applicable standard, and then
applies the standard to the Complaint.

                              II.

                           Analysis

A.    The Rule 8(a)(2) Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure
provides, in a general way, the applicable standard of pleading.
It requires that a complaint contain "a short and plain statement
of the claim showing that the pleader is entitled to relief,"
Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair
notice of what the claim is and the grounds upon which it rests,"
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal
quotation marks and ellipsis omitted).  Although a complaint need
not contain detailed factual allegations, the "showing"
contemplated by Rule 8 requires the plaintiff to do more than
simply allege legal conclusions or recite the elements of a cause
of action.  See Twombly, 550 U.S. at 555 & n.3.  Thus, while a
court must accept all of the factual allegations in the complaint
as true, it need not credit bare legal conclusions that are
unsupported by any factual underpinnings.  See Ashcroft v. Iqbal,
556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) ("While legal

                               7

conclusions can provide the framework of a complaint, they must

be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to

state a claim, the facts pleaded must allow the court to infer

that the plaintiff's right to relief is plausible.  Iqbal, 129 S.

Ct. at 1950.  To allege a plausible right to relief, the facts

pleaded must suggest liability; allegations that are merely

consistent with unlawful conduct are insufficient.  Twombly, 550

U.S. at 566-69.  "Determining whether a complaint states a

plausible claim for relief . . . [is] a context-specific task

that requires the reviewing court to draw on its judicial

experience and common sense."  Iqbal, 129 S. Ct. at 1950.

B.   Applying the Standards to the Complaint

The Complaint fails to meet the standard set forth in Rule

8(a)(2), as interpreted by the Supreme Court in Twombly and

Iqbal.  The court agrees with defendant that allegations are

nothing more than conclusory assertions and that the Complaint

does not contain factual allegations to support the elements of

any of the alleged claims and is, therefore, insufficient.

The court considers plaintiffs' theories of recovery in the

following order: first, the breach of contract and anticipatory

breach of contract claims; second, the claim for a violation of

the Texas Finance Code; next, the unreasonable collection claim;

next, the wrongful foreclosure claim; next, the negligent
misrepresentation and gross negligence claims; and finally, the
request for an accounting.

    1.   <u>Breach of Contract Claim</u>

Plaintiffs' breach of contract claim is based on the
following theories that the court has reorganized for ease of
reference: (a) breach of loan modification agreement and deed of
trust, (b) breach of unilateral contract, (c) waiver, (d)
violation of the covenant of good faith and fair dealing, and (e)
anticipatory breach of contract.  Plaintiffs further alleged that
defendant breached the contract when defendant filed suit in New
Mexico against Grijalva in an attempt to foreclose on the
Grijalva Property, in spite of promises to plaintiffs that "they
would no longer be responsible for the car wash or the loan" if
they voluntarily surrendered possession of the Water Dynamics
Property.  Compl. at 11.

In order to prevail on their breach of contract claim,
plaintiffs must establish (1) the existence of a valid contract
between plaintiffs and defendant, (2) plaintiffs' performance or
tender of performance, (3) defendant's breach of the contract,
and (4) plaintiffs' damage as a result of the breach.  <u>Smith
Int'l, Inc. v. Egle Group, LLC</u>, 490 F.3d 380, 387 (5th Cir.
2007); <u>Hackberry Creek Country Club, Inc. v. Hackberry Creek Home</u>

<u>Owners Ass'n</u>, 205 S.W.3d 46, 55 (Tex. App.--Dallas 2006, pet. denied). However, plaintiffs fail to satisfactorily plead all of these elements for a breach of contract claim based on any of the theories described above.

       a.  <u>Loan Modification Agreement and Deed of Trust</u>

To the extent that plaintiffs allege an oral agreement to reduce payments was in effect, Compl. at 9, Texas law does not recognize the validity of oral loan modification agreements in these circumstances. The alleged oral loan modification must comply with the statute of frauds. Tex. Bus. & Com. Code § 26.02. Any loan agreement exceeding $50,000 in value must be in writing. <u>Id.</u> § 26.02(b). A "loan agreement" includes any promise, agreement, understanding, or commitment pursuant to which any financial institution delays repayment of money or to otherwise make a financial accommodation. <u>Id.</u> § 26.02(a)(2). Thus, any agreement to modify the deed of trust and reduce payments on the note must be in writing. Because plaintiffs admit that the modification is not in writing, such an agreement does not comply with the statute of frauds and is therefore unenforceable.

The same statute of frauds deficiency is true of the alleged modifications made to the collateral agreement concerning the Grijalva Property. Plaintiffs alleged that defendant breached

10

its promise to release plaintiffs from future liability if they
voluntarily surrendered the Water Dynamics Property.  Plaintiffs
did not allege that this promise was contained in a written
agreement or that it fell within an exception to the statute of
frauds.  Thus, any agreement to modify the terms of the
collateral agreement is likewise unenforceable.

As for the allegation that defendant reneged on the original
terms of collateral agreement, that allegation is belied by the
statements contained in the letter that Grijalva signed in 2004.
Those statements clearly demonstrate that Grijalva acknowledged
and understood the Grijalva Property could be retained as
collateral beyond the two-year period, depending on whether the
loan was in good standing.  Compl., Ex. B.

The court also finds it noteworthy that the Complaint
contains allegations showing that plaintiffs failed to perform
adequately its obligations under the deed of trust.  Water
Dynamics admits that it defaulted on the note in 2008, which was
prior to any of the alleged wrongful conduct of defendant.
Compl. at 5 ("In 2008, Plaintiff Water Dynamics began to fall
behind on its loan payments.").  Plaintiffs did not allege that
they ever cured or attempted to cure that default.

Accordingly, plaintiffs fail to state a cause of action for breach of the deed of trust or the alleged loan modification agreement.

b.   <u>Unilateral Contract</u>

For the same reasons, plaintiffs' unilateral contract allegations fail to state a claim for relief. Plaintiffs alleged their reduced monthly payments of $1,400 constituted acceptance of an offer from defendant to modify the loan, thus creating a unilateral contract that defendant subsequently breached.[6]   <u>Id.</u> at 9. However, as already discussed, any loan agreement exceeding $50,000 in value is subject to the statute of frauds. Tex. Bus. & Comm. Code § 26.02(b). Consequently, any oral modification of the underlying loan, regardless of whether it was unilateral or bilateral, is unenforceable.

c.   <u>Waiver</u>

Without disputing their own default on the loan, plaintiffs instead contend that defendant waived their right to act on the

---

[6]With respect to the claim for breach of unilateral contract, plaintiffs alleged: Plaintiff relied on Defendant's representations and promises that it had modified Plaintiff's loan to its detriment. Plaintiff's reliance on Defendant's promises constituted a unilateral contract which was breached by the Defendant when it posted Plaintiff's property for a foreclosure sale.
Compl. at 9.

default by continuing to accept payments afterwards.[7]   Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.   Waiver is largely a matter of intent."   Jernigan v. Langley, 111 S.W.3d 153, 56 (Tex. 2003).   The burden is on plaintiffs to allege some facts that, if true, would show that the defendant "unequivocally manifested" an intent to waive that right to receive payment. See G.H. Bass & Co. v. Dalsan Properties-Abilene, 885 S.W.2d at 577 (Tex. App.--Dallas 1994, no pet.).

The court cannot discern any allegations showing that defendant intended to waive its rights under the deed of trust in the Complaint.   Instead, the Complaint simply states in a conclusory fashion that "inconsistent and inequitable conduct" constituted a waiver of the defendant's right to accelerate.[8]

---

[7]With respect to the issue of waiver, plaintiffs alleged:
Defendant's conduct of deliberately, (or negligently) delaying and misleading Plaintiff Water Dynamics to the point of foreclosure showed a pattern of unconscionable conduct.  Defendant is required to give Plaintiff an opportunity to pay the past due installments before acceleration of the entire indebtedness. . . . Defendant failed to do so . . . . Loss of the right to accelerate may result from inconsistent or inequitable conduct on the part of the holder of a promissory note. Defendant waived its right to sell the property under the deed of trust.
Compl. at 10-11 (citations omitted).

[8]Plaintiffs argued in their response to the motion to dismiss that the defendant waived its rights to performance when defendant accepted a loan modification packet, told plaintiffs that the loan had been modified, and accepted payment. Pls.' Br. in Supp. of Resp. to Mot. to Dismiss at 5. These allegations, however, do not appear anywhere in the Complaint, and even if they were true, the statute of frauds renders such an oral agreement unenforceable.

Compl. at 10.  This allegation, without more, in insufficient to state a claim for relief.

The language in the deed of trust also demonstrates that the defendant's failure to immediately exercise its rights did not constitute a waiver of its right to foreclose:

> Section 5.3 <u>Waiver</u>.  Any and all covenants in this Deed of Trust may from time to time, by instrument in writing signed by Holder and delivered to Grantor, be waived to such extent and in such manner as Holder may desire, but no such waiver shall ever affect or impair Holder's rights, remedies, powers, privileges, liens, titles, and security interest hereunder, except to the extent so specifically stated in such written agreement.  <u>Neither the exercise of, nor the failure to exercise any option or remedy under the terms of this Deed of Trust shall be considered as a waiver of the right to exercise same, or any other option or remedy given herein</u>.

Compl., Ex. A, Deed of Trust at 14 (emphasis added).

In sum, the allegations are insufficient to show waiver by defendant.

### d.   <u>Duty of Good Faith and Fair Dealing</u>

Plaintiffs alleged that defendant waived its rights under the deed of trust because defendant breached its duty of good faith and fair dealing, a duty plaintiffs claim is imposed in the performance of every contract by the Uniform Commercial Code and the Texas Business and Commerce Code §§ 1.201(20) and 9.102(c).  Compl. at 7, 10 (citing to UCC § 1.304, n.1 and Tex. Bus. & Comm. Code §§ 1.201(20), 9.102(c)).  Contrary to plaintiffs'

assertions, however, the law is clear that such a duty of good faith and fair dealing "is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power." FDIC v. Coleman, 795 S.W.2d 706, 708-10 (Tex. 1990). Such a duty does not exist in the present relationship, as Texas does not recognize a covenant of good faith and fair dealing between "a mortgagor and a mortgagee" or between a "creditor and guarantor." Id. at 709. Ordinarily, there is no such a duty in lender-lendee relationships, and plaintiffs have alleged no facts to show that their relationship with defendant is governed by this duty. Id.; English v. Fischer, 660 S.W.2d 521, 522 (Tex. 1983), Furthermore, "[b]ecause the Deed of Trust places a lien on real property, it is not governed by the UCC." Vogel v. Travelers Indem. Co., 966 S.W.2d 748, 753 (Tex. App.--San Antonio 1998, no pet.) (citing former UCC § 9.104, now § 9.109, which excludes from the scope of chapter nine "the creation or transfer of an interest in or lien on real property"). Accordingly, the UCC does not apply in these circumstances to impose a duty of good faith and fair dealing.

    e.  Anticipatory Breach of Contract

With respect to the anticipatory breach of contract claim, plaintiffs alleged that "[d]efendant breached the contract by voluntarily acting to make its performance of the contractual

obligation impossible as it rejected Plaintiff's attempts to cure the alleged default and avoid foreclosure." Compl. at 9. Anticipatory breach of contract is a "positive and unconditional refusal to perform the contract in the future." Van Polen v. Wisch, 23 S.W.3d 510, 516 (Tex. App.--Houston [1st Dist.] 2000, pet. denied). To establish anticipatory breach of contract, plaintiffs must establish (1) an absolute repudiation of the obligation by defendant, (2) a lack of just excuse for the repudiation, and (3) damage to the non-repudiating party. Gonzalez v. Denning, 394 F.3d 388, 394 (5th Cir. 2004). Plaintiffs have failed to allege an absolute repudiation by defendant or anything to show that defendant positively and unconditionally refused to perform in the future. Moreover, because plaintiffs did not allege which contract was anticipatorily repudiated--the note, deed of trust, or the alleged oral loan modification--the court cannot discern the basis for their claim. As to the alleged oral loan modification, even if the allegations were true, at best they concern an unenforceable agreement barred by the statute of frauds.

Plaintiffs also made claims of irregularities, such as defendant's alleged failure to provide a payoff statement and to

16

provide notice of the foreclosure.[9]   Nevertheless, plaintiffs failed to allege that defendant in any way prevented them from making the payments originally due under the contract.   Water Dynamics never alleged it made arrangements to cure missed payments, that it made continued payments, or that it was ready, willing, and able to make the required payments.

In sum, plaintiffs present no viable breach of contract claim on any of the theories asserted.

2.   Texas Finance Code Claim

The court now considers plaintiffs' allegations concerning a violation of the Texas Finance Code.   Plaintiffs alleged that because defendant is a "debt collector," defendant was statutorily required to be bonded by the Texas secretary of state.   Compl. at 14 (citing to Tex. Fin. Code § 392.101).

Plaintiff's argument that defendant is a "debt collector," however, completely misses the mark.   Only a "third-party debt collector" is required to obtain and file a bond with the Texas secretary of state.   See Tex. Fin. Code § 392.101 (emphasis added) (stating that a "third-party debt collector or credit bureau may not engage in debt collection unless the third-party

---

[9] Although plaintiffs alleged that they did not receive notice as required by Section 51.002 of the Property Code, Compl. at 8, they also alleged that they did in fact receive the notice of default, id. at 8.  Plaintiffs therefore fail to allege how the allegedly deficient notice damaged plaintiffs, or how such notice amounted to an absolute repudiation of defendant's obligation.

17

debt collector or credit bureau has obtained a surety bond" and filed a copy of the bond with the secretary of state).  The Finance Code relies on the Federal Fair Debt Collection Practices Act to define the term "third-party debt collector."  Tex. Fin. Code § 392.001(7); 15 U.S.C. § 1692a(6).  Plaintiffs fail to ever allege that defendant is a third-party debt collector bound to comply with the bonding requirements.  Nowhere in the Complaint is it ever alleged that defendant is a "third-party debt collector";[10] nor are there sufficient facts alleged to show that defendant is in fact a third-party debt collector.  Thus, plaintiffs have failed to state a claim for a violation of the Finance Code.

3.   Unreasonable Collection Claim

The court next evaluates plaintiffs' unreasonable collection claim.  Unreasonable collection is an intentional tort that requires plaintiffs to prove that defendant's actions amount "to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."  EMC Mortg. Corp. v. Jones, 252 S.W.3d 857, 868 (Tex. App.--Dallas 2008, no

---

[10]In their response to the motion to dismiss, plaintiffs reiterated the argument that defendant is a "debt-collector." Pls.' Br. in Supp. of Resp. to Mot. to Dismiss at 21.  In their sur-reply, plaintiffs provided the statutory definition of a third-party debt collector--but again, they never actually alleged defendant is a third-party debt collector. Pls'. Sur-Reply in Supp. of Resp. to Def.'s Mot. to Dismiss at 4-5.

pet.).   The Texas Supreme Court has found it "necessary that the lender carry on a campaign of harassment in order to entitle the borrowers to actual damages, much less exemplary damages." Ware v. Paxton, 359 S.W.2d 897, 899 (Tex. 1962).   The Complaint engages in a lengthy description of various misconduct by defendant, including the wrongful imposition of late charges and penalties on plaintiffs' account and placing the property in foreclosure.   Compl. at 12-14.   Nonetheless, plaintiffs fail to allege that defendant's actions were done maliciously, wantonly, intentionally, or willfully.   It is apparent to the court that the Complaint lacks any allegations to support an unreasonable collection claim.   There is no allegation that defendant harassed plaintiffs in such a manner, that defendant acted intentionally to cause plaintiffs mental anguish and bodily harm, or that defendant can be held liable for any misconduct.   Accordingly, plaintiffs fail to state a claim for unreasonable collection.

     4.   Wrongful Foreclosure

     The court now turns to the wrongful foreclosure claim.   To state a claim for wrongful foreclosure, plaintiff must show: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." Sauceda v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App.--Corpus Christi

2008, no pet.); <u>Am. Sav. & Loan Ass'n of Houston v. Musick</u>, 531 S.W.2d 581, 587 (Tex. 1976)

In a "wrongful foreclosure" claim, it is not enough to merely show a defect in the foreclosure process; the plaintiff must also show that an inadequate sales price resulted from the defect alleged. <u>See</u> <u>Musick</u>, 531 S.W.2d at 587. While plaintiffs alleged that the property was sold at substantially below market value, Compl. at 13, they did not allege facts that would support a conclusion that an alleged defect caused the sales price to be inadequate. Instead, plaintiffs' description of the alleged defect is flatly contradictory: the Complaint alleged that the trustee failed to call out the property for bidding and prevented the unnamed "potential purchaser" from bidding, but the Complaint then alleged that the potential purchaser actually made a bid and this bid was "rejected" by the defendant. Compl. at 8. Because the court cannot pinpoint the nature of the defect from the Complaint, the court cannot discern what caused the sales price to be rendered inadequate. Thus, plaintiffs have failed to plead sufficient factual allegations to show that defendant is liable for a wrongful foreclosure claim.

5.   <u>Negligent Misrepresentation and Gross Negligence</u>

For their negligent misrepresentation claim, plaintiffs alleged that defendant made false representations regarding the loan modification and the collateral agreement covering the Grijalva Property.[11]  Compl. at 14-15.  To state a claim for negligent misrepresentation, plaintiffs must allege that: (1) the representation was made by defendant in the course of its business or in a transaction in which it has a pecuniary interest; (2) defendant supplied false information for the guidance of others in their businesses; (3) defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) plaintiffs suffered pecuniary loss by justifiably relying on the representation.  <u>Federal Land Bank Ass'n of Tyler v. Sloane</u>, 825 S.W.2d 439, 442 (Tex. 1991).

There is no indication from the factual allegations in the Complaint to show that plaintiffs were justified in relying upon the defendant's statements that it "permanently modified" the

_____

[11]Specifically, plaintiffs allege:
Defendant told Plaintiff that it permanently modified Plaintiff's loan. . . . However, Defendant later retracted its statement[,] claiming that the modification was temporary and began foreclosure proceeding[s]. . . . Defendant then represented that Plaintiffs were no longer liable for the loan but then filed suit against Grijalva in an attempt to foreclosure [sic] on the Grijalva property for the deficiency amount.
Compl. at 13.

loan and that "plaintiffs were no longer liable for the loan."
Compl. at 3.  The law is clear that such statements concerning
the loan modification and the collateral agreement were not
enforceable unless they were made in writing.  Tex. Bus. & Com.
Code § 26.02.  And, the language in the deed of trust plainly
states that the defendant's failure to immediately exercise its
rights did not constitute a waiver of its right to foreclose.
Compl., Ex. A, Deed of Trust at 14.

Consequently, any reliance on these alleged
misrepresentations was not justifiable.  Plaintiffs therefore
cannot maintain an action for negligent misrepresentation.

Since the negligent misrepresentation claim is being
dismissed, and since the gross negligence claim is based on the
same allegations as their negligent misrepresentation claim,
Compl. at 14-15, plaintiffs also cannot maintain an action for
gross negligence.

6.   Accounting

The court now turns to the request for an accounting.  In
the Complaint, Water Dynamics "request[s] an Order for an
accounting of all transactions on its mortgage loan," Compl. at
14, "pursuant to the Real Estate Settlement Procedures Act (12
U.S.C. Section 2605(e))," id. at 17.  The Complaint, however,
fails to state the prerequisites for such a remedy.  For

instance, plaintiffs fail to allege that defendant is a "loan servicer," that plaintiffs made a "qualified written request," or that there was any failure by defendant to respond to such a request.   12 U.S.C. § 2605(e).   Because the Complaint has stated no cause of action that allows for an accounting, this request should be denied.

C.   Unaddressed Issues

Although plaintiffs did not state promissory estoppel as a cause of action in the Complaint, they raised this claim for the first time in their response to the motion to dismiss.   Pls.' Br. in Supp. of Resp. to Mot. to Dismiss at 11.   This claim is unsupported by the allegations in the Complaint; there is nothing to show that plaintiffs reasonably and foreseeably relied on a promise made by defendant.   English, 660 S.W.2d at 524.   Because this claim was not properly included in the Complaint, however, the court finds no need to address these allegations any further.

Additionally, in its motion to dismiss, defendant raised several arguments for dismissing plaintiffs' claims that the court did not address in full, because the court found it unnecessary to do so in disposing of the motion to dismiss.   The failure to address these arguments in any respect serves as no indication that they were without merit.

III.

Conclusion and Order

The court therefore concludes that plaintiffs have not alleged any facts that would allow the court to draw the reasonable inference that plaintiffs are entitled to declaratory relief, or that defendant is liable to plaintiffs under any of the theories of liability alleged in the Complaint.  As a result, plaintiffs' Complaint fails to state a plausible claim to relief and should be dismissed.

For the reasons given above,

The court ORDERS that defendant's motion to dismiss be, and is hereby, granted.

The court further ORDERS that all claims asserted by plaintiffs against defendant be, and are hereby, dismissed with prejudice.

SIGNED January 6, 2012.

JOHN McBRYDE
United States District Judge